UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY F. P.[1],

                Plaintiff,         Civil Action No. 22-11736

v.                                    Gershwin A. Drain
                                      United States District Judge

COMMISSIONER OF                David R. Grand
SOCIAL SECURITY,                 United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

Plaintiff Tony F. P. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Background

Plaintiff was 40 years old at the time of his application date of February 21, 2017, and at 6'3" tall weighed approximately 170 pounds. (PageID.259, 264).[2] He did not complete high school but earned a GED. (PageID.265). Previously, he worked as a landscaper and machine operator, but he stopped working because of his medical conditions in 2008. (PageID.264-66). He now alleges disability primarily as a result of back, neck, and shoulder pain; carpal tunnel syndrome; chronic obstructive pulmonary disease ("COPD"); anxiety; post-traumatic stress disorder ("PTSD"); and bipolar disorder. (PageID.264, 991).

After Plaintiff's application for SSI was denied at the initial level on May 19, 2017 (PageID.125-28), he timely requested an administrative hearing, which was held on March 20, 2018, before ALJ Crystal White-Simmons (PageID.91-118). On July 20, 2018, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act.

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 11.

(PageID.47-63). On July 22, 2019, the Appeals Council denied review. (PageID.33-37).

On September 5, 2019, Plaintiff filed suit in this Court, seeking judicial review of the Commissioner's unfavorable decision. (PageID.670-71). On July 27, 2020, the Honorable Gershwin A. Drain issued an Order adopting this Court's Report and Recommendation, finding error with the ALJ's decision and remanding the case for further proceedings. (PageID.672-91). On August 29, 2020, the Appeals Council issued an Order remanding the case to the ALJ with instructions to consolidate Plaintiff's prior applications with a subsequent application for SSI filed on March 9, 2020, and to issue a new decision on the consolidated claims. (PageID.692-95).

As a result, a second administrative hearing was held before ALJ White-Simmons on December 1, 2020. (PageID.604-37). On December 29, 2020, the ALJ issued a second written decision, again finding that Plaintiff is not disabled under the Act. (PageID.578-98). On June 16, 2022, the Appeals Council rejected Plaintiff's exceptions to the ALJ's decision. (PageID.567-71). Plaintiff timely filed for judicial review of that final decision on July 27, 2022. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

  **B. The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not

4

disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 21, 2017 (the application date). (PageID.581). At Step Two, the ALJ found that he has the severe impairments of disc protrusion of the lumbar spine, degenerative disc disease of the cervical spine, left shoulder osteoarthritis, COPD, mild bilateral carpal tunnel syndrome, generalized anxiety disorder, bipolar disorder, and PTSD. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.583).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; frequent fingering; occasional reaching overhead; occasional rotation, flexion, and extension of the neck; no exposure to extreme cold; occasional exposure to pulmonary irritants; requires the option to sit for 1-2 minutes after 30 minutes of standing; limited to work involving only simple, routine, and repetitive tasks; and only occasional interaction with the public, coworkers, and supervisors. (PageID.587).

At Step Four, the ALJ found that Plaintiff is not able to perform any of his past relevant work. (PageID.596). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that

Plaintiff is capable of performing the job of clerical assistant (50,000 jobs nationally). (PageID.597). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d

6

680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.      Analysis**

In his motion for summary judgment, Plaintiff argues that the ALJ erred in giving only "limited weight" to the opinion of his treating psychiatrist, Junaid Ghadai, M.D.[3] (ECF No. 13, PageID.1017-19). The treating physician rule in effect on February 21, 2017,

---

[3] Because the Court finds error in the ALJ's evaluation of Plaintiff's mental impairments, it will focus its discussion on medical evidence pertaining to those impairments. On remand, however, the ALJ should fully consider the medical evidence pertaining to Plaintiff's physical impairments as well. In terms of Plaintiff's lower back and neck pain, this includes, but is not limited to the February 28, 2018 recommendation of Plaintiff's treating physician, Glenn Minster, M.D., that he undergo an anterior cervical decompression and fusion "due to [his] increasingly severe symptoms and failure of all nonoperative management[.]" (PageID.566). This recommendation was made again in March 2020, when Plaintiff reported worsening pain, as well as numbness and weakness, and x-rays demonstrated "disc collapse from C5 to C7." (PageID.835). And, in terms of Plaintiff's hand impairments, special consideration should be given to medical evidence demonstrating carpal tunnel syndrome and peripheral nerve palsy, with right wrist droop, limited flexion of the fingers, and decreased strength. (PageID.419, 555).

7

when Plaintiff filed his claim,[4] "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, on January 15, 2018, Dr. Ghadai completed a "Mental Impairment Questionnaire," in which he listed Plaintiff's diagnoses as generalized anxiety disorder, PTSD, and chronic mood disorder, and characterized his prognosis as fair, with treatment. (PageID.534). Dr. Ghadai opined that Plaintiff will likely be absent from work more than four days a month because of his impairments and will be off task at least 20% of the time during an 8-hour workday because of attention and concentration deficits, an inability to

---

[4] For claims filed on or after March 27, 2017, the regulations significantly alter how the agency considers medical opinions and expressly reject the "treating physician rule" discussed herein. *See* 20 C.F.R. § 416.920c. However, since Plaintiff filed his claim on February 21, 2017, the Court will discuss the ALJ's compliance with the treating physician rule.

8

sustain an ordinary routine without supervision, an inability to deal with normal work stress, and distraction from working in proximity to others. (*Id.*). Dr. Ghadai further opined that Plaintiff cannot handle minimal changes in the work routine or accept instructions and respond appropriately to supervisors. (*Id.*). When asked to list the clinical findings supporting his opinions, Dr. Ghadai explained that Plaintiff has a chronic mood disorder, with periods of intense depressed mood; feelings of helplessness, hopelessness, and worthlessness; frequent mood swings; poor concentration; and impaired frustration tolerance. (PageID.535). Dr. Ghadai further noted that Plaintiff also experiences periods of intense anxiety with severe restlessness and agitation. (*Id.*).

The ALJ considered the Mental Impairment Questionnaire completed by Dr. Ghadai, discussing it in extensive detail, as set forth below:

> Ultimately, this opinion is given only limited weight. Specifically, the undersigned first acknowledges that Dr. Ghadai's own treatment notes do appear to support the fact that the claimant would have *some* mental health limitations. However, the limitations he posed do appear to be extreme in relation to even his own records. In this regard, as indicated earlier in this decision, during mental status exams with Dr. Ghadai, some abnormalities were observed, including some agitated moods, depressed and anxious moods, and a constricted and labile affect. Moreover, during a few visits, the claimant demonstrated poor eye contact and limited insight. These findings would reasonabl[y] lead to the conclusion that the claimant would certainly have some mental limitations. However, Dr. Ghadai also consistently noted that the claimant demonstrated a casual appearance, cool behavior, cooperative behavior, goal-oriented thoughts, and a generally fair insight. Moreover, the claimant consistently denied suicidal ideation, his memory has been grossly intact, and he has been fully oriented. It was also noted that the claimant demonstrated mostly good eye contact and that his speech was clear, though hyper-verbal at times. Dr. Ghadai also consistently indicated in the treatment notes that the claimant was *not* experiencing side effects from his medication.

9

Therefore, Dr. Ghadai's opinion is not entirely consistent with his own treatment notes, as his treatment notes do not support the extreme limitations he posed. For example, in his opinion, Dr. Ghadai states that the claimant has side effects from medication but in his treatment notes, he consistently indicates that the claimant has no medication side effects. Moreover, in his opinion, Dr. Ghadai notes that the claimant would be unduly distracted and would need unscheduled breaks greater than 20% of the workday. However, these limitations do not appear supported by Dr. Ghadai's treatment notes, as he does not indicate significant issues with the claimant's concentration or memory. In fact, he notes that the claimant's memory has consistently been intact, that the claimant was fully oriented, and that the claimant demonstrated generally cooperative behavior.

\* \* \*

Moreover, the undersigned notes that Dr. Ghadai's treatment notes are partially illegible. Specifically, Dr. Ghadai's notes written above the "Mental Status Examination" section along with his notes written in the "Assessment / Plan" section are almost entirely illegible in all records. Therefore, it was difficult for the undersigned to assess these notes in further considering the weight given to Dr. Ghadai's opinion. The undersigned feels that assessment of these notes would have been beneficial, as Dr. Ghadai appears to assert factors in his opinion that were not readily ascertainable from reading his treatment notes. Specifically, he asserted in his opinion that the claimant had feelings of helplessness, hopelessness, worthlessness, frequent mood swings, poor concentration, and impaired frustration tolerance. Additionally, Dr. Ghadai asserted that the claimant had periods of intense anxiety episodes and severe restlessness and agitation. However, unfortunately, these allegations are not supported by Dr. Ghadai's treatment notes. While the undersigned certainly acknowledges that Dr. Ghadai is a treating source, that he is a psychiatric specialist, and that he has been treating the claimant since the year 2012 (per his own report), it appears that his opinion may have been partially based upon the claimant's own subjective complaints and this further lends to the limited weight given to his opinion. Specifically, this appears to be a reasonable assumption, as the undersigned is unable to ascertain whether the claimant's "feelings of helplessness … poor concentration … intense anxiety episodes" were objective findings made by Dr. Ghadai, as his mental status exams did not appear to reflect these significant symptoms. As such, the extreme degree of

>>limitations posed by Dr. Ghadai simply do not appear supported by his treatment notes.

(PageID.592-93) (emphasis in original) (internal citations omitted). Plaintiff now argues that the ALJ erred in discounting the opinion of Dr. Ghadai – a specialist, who treated him over a period of many years – based primarily on an alleged internal consistency with his own treatment notes – notes which the ALJ herself noted were "partially illegible." (PageID.593). Under the circumstances, the Court finds merit to Plaintiff's argument.

As an initial matter, in many respects, Dr. Ghadai's opinion is consistent with his own treatment notes, which contain "objective medical evidence" of Plaintiff's mental impairments. In the psychiatric context, objective medical evidence consists of "medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.,* abnormalities of behavior, mood, thought, memory, orientation, development, or perception." *Plummer v. Comm'r of Soc. Sec.*, No. 16-13059, 2017 WL 3821751, at *2 (E.D. Mich. Sept. 1, 2017). Here, throughout all of Plaintiff's visits in 2016 and 2017, Dr. Ghadai repeatedly made the following findings on mental status examination: agitated behavior; poor eye contact; depressed, anxious, and/or irritable mood; brief, pressured, and/or hyperverbal speech; constricted or labile affect; and fair or limited insight. (PageID.354-70, 516-32). Thus, as both the ALJ (PageID.592) and the Commissioner (ECF No. 15, PageID.1042) acknowledge, there is objective medical evidence that supports Dr. Ghadai's opinion.

The Court recognizes, as the ALJ noted, that Plaintiff's abnormalities fluctuated during his treatment with Dr. Ghadai, and there are instances on which Dr. Ghadai noted

that Plaintiff exhibited grossly intact memory, full cognition, clear speech (though hyperverbal at times), cool and cooperative behavior, casual appearance, goal-oriented thoughts, generally fair insight, and no suicidal ideations.[5] (PageID.592) (citing PageID.354-55, 357-70, 515-32, 1003). As Plaintiff aptly notes, however, the fact that – on certain occasions – he presented in this manner is entirely consistent with Dr. Ghadai's opinion that his impairments are likely to produce "good days" and "bad days." (ECF No. 13, PageID.1019; *see also* PageID.534).

The Court's concern with this aspect of the ALJ's decision is made more acute by the ALJ's observation that Dr. Ghadai's treatment notes are "partially illegible" and that "assessment of these notes would have been beneficial" (PageID.593), and her failure to take steps to clarify or otherwise ascertain the contents of these notes. For example, the ALJ referenced Dr. Ghadai's opinion that Plaintiff "had feelings of helplessness, hopelessness, worthlessness, frequent mood swings, poor concentration, and impaired

---

[5] The ALJ also discounted Dr. Ghadai's opinion – in part – because Plaintiff's mental status findings during examinations with his *physical* treatment providers were routinely unremarkable. (PageID.593-94). Specifically, the ALJ cited to certain occasions when providers other than Dr. Ghadai – who were treating Plaintiff for conditions such as hypertension, hand pain, nicotine dependence, COPD, hyperlipidemia, and back pain – observed that he demonstrated normal mood and affect; was alert and oriented and relaxed; demonstrated a normal memory with no inability to concentrate; and was described as active and cooperative. (PageID.593-94) (citing PageID.296, 449, 451, 555, 600, 601, 921). Courts have recognized, however, that "the opinions of physicians who only treat or assess physical impairments should not typically be used to undermine the credibility of a claimant's psychological limitations or to suggest that the claimed impairments are inconsistent with the *psychological* medical evidence of record." *Therrien v. Comm'r of Soc. Sec.*, No. 18-12966, 2019 WL 3202194, at *10 (E.D. Mich. June 28, 2019) (emphasis in original) (internal quotations omitted). This reasoning is particularly applicable here, when one weighs Dr. Ghadai's long-term treatment of Plaintiff's *mental health*, his expertise in that field, and the long-term persistent abnormal mental findings documented in his records against what appear to be "copy-and-paste" notations by doctors who treated Plaintiff's *physical impairments* regarding Plaintiff's mood and the fact that Plaintiff did not complain to them about anxiety and depression.

frustration tolerance[,]" as well as "periods of intense anxiety episodes and severe restlessness and agitation[.]" (*Id.*). The ALJ acknowledged that assessment of Dr. Ghadai's illegible notes "would have been beneficial," but rather than undertaking such an assessment, or seeking additional information from Dr. Ghadai, the ALJ simply concluded that Plaintiff's "allegations are not supported by Dr. Ghadai's treatment notes." (*Id.*). Under the circumstances, it is impossible for the Court to evaluate whether the ALJ's conclusion that the Dr. Ghadai's opinion conflicts with his treatment notes is supported by substantial evidence, as virtually *all* of Dr. Ghadai's notes are illegible. (PageID.354-70, 518-23, 1003-07).

In the recent case of *Olivia M. v. Saul*, No. 4:19-cv-05211-MKD, 2020 WL 10058123, at *4-5 (E.D. Wash. Aug. 20, 2020), the court considered a similar situation, in which the ALJ accorded little weight to the opinion of the plaintiff's treating physician because his notes were "incredibly limited and [were] not legible." Noting that the physician's notes were "not wholly indecipherable" but were "certainly difficult to read and many [were] illegible[,]" the court framed the issue on review as "whether the record was inadequate to allow proper evaluation of medical evidence, including [the treating physician's] opinion." *Id.* at *5. The court further recognized that an ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *See id.*; *see also Williams v. Astrue*, ED CV 08-549-PLA, 2010 WL 431432, at *7 (C.D. Cal. Feb. 1, 2010) ("the ALJ's finding that [the doctor's] treatment notes were unclear or illegible … should have triggered his duty to clarify those ambiguities"). In *Olivia M.*, the court noted that the ALJ's duty to further

develop the record was triggered because the medical evidence at issue was inadequate to allow for proper evaluation of the evidence, as the physician at issue was the only source to provide an opinion regarding the plaintiff's physical impairments; his treatment notes spanned a long period of time; and his opinion was the most recent medical opinion. *See Olivia M.*, 2020 WL 10058123, at *5. Under the circumstances, then, the court concluded that "illegibility was not a proper basis to disregard medical evidence of this level of importance to the matter." *Id.* (citing cases). Other courts have similarly held that once an ALJ finds a doctor's treatment notes illegible, he or she has an obligation to recontact the doctor to obtain clarification of those notes. *See Lee v. Comm'r of Soc. Sec.*, No. CIV 21-363-JAR, 2023 WL 2645341, at *4 (E.D. Okla. Mar. 27, 2023) (where notes were "mostly indecipherable," ALJ had duty to recontact physician); *Nathanson v. Comm'r of Soc. Sec.*, No. 5-18-CV-00167-RBF, 2019 WL 989646, at *5-6 (W.D. Tex. Mar. 1, 2019) (the illegibility of important evidentiary material, such as a doctor's treatment notes, warrants remand for clarification); *Minnifield v. Berryhill*, No. 3:17cv1196(DFM), 2018 WL 4382979, at *7 (D. Conn. Sept. 14, 2018) (to the extent the ALJ discounted treating doctor's opinion on the grounds that his treatment notes were illegible, the ALJ had an affirmative obligation to reach out to the plaintiff's treating source for additional evidence or clarification) (citing cases); *Terry v. Berryhill*, No. 17-11496, 2018 WL 2994662, at *7-8 (E.D. Mich. May 18, 2018) (where treating physician's notes were illegible, ALJ was required to seek clarification as to the notes forming the basis of the physician's medical opinion); *Brown v. Comm'r of Soc. Sec.*, No. 15-12494, 2016 WL 4253967, at *7 (E.D. Mich. July 13, 2016) (remanding where the treating doctor's notes were "completely

14

illegible so that the Court cannot even attempt an educated guess as to whether or how well they support her medical opinion").

As in the cases cited above, the Court has difficulty determining whether the weight given by the ALJ to Dr. Ghadai's opinion is supported by substantial evidence because the doctor's treatment notes – spanning the period of several years – are largely illegible. It is true that, in most of his notes, it is possible to discern how Dr. Ghadai evaluated Plaintiff's appearance, behavior, speech, mood, and affect, as certain words were circled or underlined at each visit. (PageID.354-70, 516-32, 1003-07). As discussed above, *see supra* at 11, in many of those instances, the findings were favorable to Plaintiff's claimed disability, and at the top of each page of treatment notes, there are handwritten words – purportedly reflecting Plaintiff's complaints or the doctor's assessment of how he was doing – none of which can be read. (*Id.*). Similarly, there are handwritten scribbles under the "Assessment/Plan" section of Dr. Ghadai's treatment notes, none of which can be clearly deciphered. (*Id.*).

In sum, without more information about the substance of these aspects of Dr. Ghadai's treatment notes, the Court simply cannot perform the required analysis of determining whether the weight given by the ALJ to Dr. Ghadai's opinion is supported by substantial evidence. Accordingly, remand so that the ALJ may properly evaluate Dr. Ghadai's treatment notes is necessary.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, Plaintiff's Motion for

Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: May 18, 2023                                            s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                                       United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 18, 2023.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager